DIANNE M. MCCOMBS, FORMERLY KNOWN AS
DIANNE M. LEVELL, APPELLEE, V. DALE RAY HALEY,
APPELLEE, AND JOHN C. MCCOMBS, APPELLANT.

700 N.W.2d 659

Filed July 26, 2005.    No. A-03-1361.

David J. Lanphier, of Broom, Johnson, Clarkson & Lanphier, for appellant.

James B. McVay, of Tiedeman, Lynch, Kampfe & McVay, for appellee Dianne M. McCombs.

IRWIN, CARLSON, and MOORE, Judges.

CARLSON, Judge.

## INTRODUCTION

Pursuant to a declaratory judgment action brought by Dianne M. McCombs, formerly known as Dianne M. Levell, the district court for Douglas County, Nebraska, declared that a purported marriage between Dianne and Dale Ray Haley is null and void. John C. McCombs filed a motion asking the trial court to grant a new trial or to set aside said judgment, alleging that the court did not have jurisdiction over Dianne's declaratory judgment action. The trial court overruled John's motion, finding that John was not a necessary party to the declaratory judgment action and that he did not have standing to make such a motion. We affirm.

## BACKGROUND

Dianne filed a declaratory judgment action on February 26, 2003, asking the court to declare the purported marriage between her and Dale to be null and void. Trial was held on the declaratory judgment action on April 24. Dianne testified that she met Dale in 1969 while she was living in Nebraska. In September 1975, Dale was serving time in prison in Leavenworth, Kansas. At that time, Dianne and Dale entered into an arrangement in which Dianne agreed to be Dale's wife "on paper" so that the parole board would believe he had a wife and son to come home to when he was released. Dianne and an individual named David Harpster obtained a marriage license in Dianne's and Dale's names from the "Clerk's office" in Lancaster County, Nebraska. In obtaining the license, Harpster represented to the clerk's office that he was Dale. Dale never appeared before the clerk to obtain

the license; nor had he authorized Harpster to act on his behalf. On September 29, 1975, Dianne and Harpster, again representing himself as Dale, participated in a marriage ceremony in Lancaster County. At the time the ceremony took place, Dale was still in prison in Leavenworth, Kansas.

Dianne testified that when she and Harpster obtained the marriage license and went through the marriage ceremony, she did not intend to actually be Dale's wife. Dianne testified that she never expected she and Dale would live together as husband and wife and that they never did. She further testified that she and Dale never consummated the purported marriage and that she saw Dale only one time between 1977, when Dale was released from prison, and 1978, when she moved out of Nebraska. She had no contact with him after moving out of Nebraska until she contacted him about the declaratory judgment action.

Dale entered a voluntary appearance and did not appear at the trial. Dale's testimony was presented in the form of an affidavit and was consistent with Dianne's testimony. It further stated that he did not give Harpster any authority to obtain a marriage license on his behalf or to participate in a marriage ceremony on his behalf and that it was not his intention to enter into a marital relationship with Dianne. A stipulation signed by both parties was also entered as evidence which set forth facts consistent with Dianne's testimony and Dale's affidavit.

At the conclusion of the trial, the trial court found that Dianne's petition should be granted because Dianne and Dale never actually entered into their purported marriage. The court declared that the purported marriage was "null and void ab initio, from the beginning." The trial court entered an order to this effect on April 28, 2003.

On April 30, 2003, John filed a motion for new trial or to set aside the judgment, alleging that he had standing to bring such motion as a real party in interest because an action was pending in a Florida court concerning the validity of a marriage between him and Dianne. The motion stated that the validity of the purported marriage between Dianne and Dale is material and relevant to the marriage at issue in the Florida action. The motion further alleged that neither Dianne nor Dale is a Nebraska resident as required by Nebraska law for the court to have jurisdiction in

an annulment action. John did not file a motion to intervene in the original action.

A hearing on John's motion was held on May 30, 2003. John offered certain exhibits in support of his position. The trial court reserved ruling on the admission of John's exhibits at the time they were offered. There is no indication in the record that the court ever ruled on their admission, and thus, there is no indication that the exhibits were ever received into evidence. The trial court overruled John's motion, finding that it had jurisdiction to declare Dianne and Dale's purported marriage null and void and that John was not a necessary party to the action and did not have standing to move for a new trial.

### ASSIGNMENTS OF ERROR

John assigns that the trial court erred in (1) decreeing an annulment in the absence of subject matter jurisdiction, (2) determining that granting an annulment under the Uniform Declaratory Judgments Act waives the statutory requirements for subject matter jurisdiction for an annulment, (3) excluding the exhibits he offered, (4) determining that he lacked standing to contest the annulment, and (5) refusing to vacate the annulment.

### STANDARD OF REVIEW

■ The presence of necessary parties in declaratory judgment actions is jurisdictional and cannot be waived, and if such persons are not made parties, then the district court has no jurisdiction to determine the controversy. See, *Dunn v. Daub*, 259 Neb. 559, 611 N.W.2d 97 (2000); *Taylor Oil Co. v. Retikis*, 254 Neb. 275, 575 N.W.2d 870 (1998).

■ Standing is a jurisdictional component of a party's case because only a party who has standing may invoke the jurisdiction of a court. See, *Mutual Group U.S. v. Higgins*, 259 Neb. 616, 611 N.W.2d 404 (2000); *Rozmus v. Rozmus*, 257 Neb. 142, 595 N.W.2d 893 (1999).

■ When a jurisdictional question does not involve a factual dispute, its determination is a matter of law, which requires an appellate court to reach a conclusion independent of the decisions made by the lower courts. *Ruzicka v. Ruzicka*, 262 Neb. 824, 635 N.W.2d 528 (2001); *Nebraska Nutrients v. Shepherd*, 261 Neb. 723, 626 N.W.2d 472 (2001).

## ANALYSIS

■ We first address whether the trial court properly exercised its jurisdiction over Dianne's declaratory judgment action to clarify her marital status relative to Dale. A declaratory judgment action is to declare the rights, status, or other legal relations between the parties. Neb. Rev. Stat. § 25-21,149 (Reissue 1995); *Bentley v. School Dist. No. 025*, 255 Neb. 404, 586 N.W.2d 306 (1998). As the trial court found, § 25-21,149 does not set forth the subject matters which are appropriate for such actions. Thus, the decision whether to entertain an action for declaratory judgment is within the discretion of the trial court. *State Farm Mut. Auto. Ins. Co. v. Allstate Ins. Co.*, 268 Neb. 439, 684 N.W.2d 14 (2004); *Continental Western Ins. Co. v. Farm Bureau Ins. Co.*, 2 Neb. App. 527, 511 N.W.2d 559 (1994).

There is authority which holds that the marital status of parties is a proper subject for declaratory relief. 26 C.J.S. *Declaratory Judgments* § 38(a) (1956). "Under statutes providing for declaratory judgments, a declaration as to the marital status of the parties is contemplated, where an actual, justiciable controversy exists." *Id.* at 116. Further, 22A Am. Jur. 2d *Declaratory Judgments* § 173 at 740 (2003) states in part:

Declaratory judgments may be used to determine marital status and rights incident thereto; however an action for declaratory judgment cannot be used by a party to obtain a divorce or annulment, or to entertain actions for declaratory relief where the state has no interest or concern with the marital status questioned.

It is clear that the State of Nebraska has sufficient interest and concern in the status of the purported marriage between Dianne and Dale to allow the trial court to entertain the declaratory judgment action. The purported marriage between Dianne and Dale occurred in Nebraska, and Dianne was a resident of Nebraska at the time.

■ We further recognize that Dianne did not have a remedy, other than a declaratory judgment action, available to her. An action for declaratory judgment does not lie where another equally serviceable remedy is available. *Northwall v. State*, 263 Neb. 1, 637 N.W.2d 890 (2002); *Galyen v. Balka*, 253 Neb. 270, 570 N.W.2d 519 (1997). Dianne did not have an equally

serviceable remedy available to her, as she could not file an action for an annulment. Dianne could not satisfy the residency requirement for an annulment, which requires that the plaintiff be a resident of the county in which the complaint is filed. See Neb. Rev. Stat. § 42-373 (Reissue 2004). Dianne was not a resident of Nebraska when she filed her declaratory judgment action. Further, none of the grounds for an annulment listed in Neb. Rev. Stat. § 42-374 (Reissue 2004) apply to Dianne's purported marriage to Dale. The grounds under that statute include the following: (1) The marriage between the parties is prohibited by law, (2) either party is impotent at the time of the marriage, (3) either party had a spouse living at the time of the marriage, (4) either party was mentally ill or a person with mental retardation at the time of marriage, or (5) force or fraud. An annulment action can be granted only when one or more of the grounds enumerated in § 42-374 exist. See *Guggenmos v. Guggenmos*, 218 Neb. 746, 359 N.W.2d 87 (1984). Therefore, based on the above analysis and the circumstances in the present case, we determine that the trial court did not abuse its discretion in entertaining jurisdiction over Dianne's declaratory judgment action.

We next consider whether John was a necessary party to the declaratory judgment action between Dianne and Dale. The trial court concluded that John was not a necessary party to the declaratory judgment action and that he did not have standing to move for a new trial. The presence of necessary parties in declaratory judgment actions is jurisdictional and cannot be waived, and if such persons are not made parties, then the district court has no jurisdiction to determine the controversy. See, *Dunn v. Daub*, 259 Neb. 559, 611 N.W.2d 97 (2000); *Taylor Oil Co. v. Retikis*, 254 Neb. 275, 575 N.W.2d 870 (1998). If John was a necessary party, the trial court did not have jurisdiction to declare the purported marriage between Dianne and Dale null and void.

Neb. Rev. Stat. § 25-21,159 (Cum. Supp. 2004) provides in part: "When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding." The Nebraska

Supreme Court has held on numerous occasions that the statute authorizing declaratory judgments is applicable only where all interested and necessary persons are made parties to the proceeding. *Dunn v. Daub, supra*; *Taylor Oil Co. v. Retikis, supra*.

A necessary or indispensable party has been defined as one who has an interest in the controversy to an extent that such party's absence from the proceedings prevents the court from making a final determination concerning the controversy without affecting such party's interest. *Id.* A necessary party has also been defined as one who may be compelled to respond to the prayer of the plaintiff's petition, and where there is nothing such a one is called upon to do, or can be compelled to do as a duty, one is not a necessary party. See, *Calabro v. City of Omaha*, 247 Neb. 955, 531 N.W.2d 541 (1995); *State ex rel. Stenberg v. Murphy*, 247 Neb. 358, 527 N.W.2d 185 (1995).

John's counsel argued to the trial court that John was a necessary party because the order declaring the purported marriage between Dianne and Dale null and void could adversely affect his interest in the pending Florida action between him and Dianne. At the hearing on John's motion, John offered certain exhibits to support his position that he was a necessary party. The exhibits were marked for identification, but the trial court reserved ruling on the exhibits at the time they were offered. The record does not show that the trial court ever ruled on the admissibility of John's exhibits or that an offer of proof was ever made. Therefore, based on the record before us, the exhibits were not received into evidence and were not considered by the trial court. Thus, we do not consider any of the exhibits on appeal. See *Morrison Enters. v. Aetna Cas. & Surety Co.*, 260 Neb. 634, 619 N.W.2d 432 (2000). Further, John did not testify at the hearing on his motion. As such, there was no evidence before the trial court to support John's position that he was a necessary party.

John failed to show that his absence from the declaratory judgment action prevented the court from making a final determination of the status of Dianne and Dale's purported marriage without affecting John's interest. Further, there is nothing John can be "called upon to do, or can be compelled to do as a duty" as a result of the court's order declaring the purported marriage

null and void. See *Calabro v. City of Omaha*, 247 Neb. at 974, 531 N.W.2d at 554. We conclude on this record that John was not a necessary party to the declaratory judgment action pursuant to § 25-21,159. The trial court made a complete determination of the status of the purported marriage between Dianne and Dale without John's being included as a party to the action.

The trial court also found that John did not have standing to move for a new trial or for the judgment to be set aside in the declaratory judgment action. Having determined that John was not a necessary party to the declaratory judgment action, we conclude that it logically follows that he did not have standing to challenge the court's order declaring Dianne and Dale's purported marriage null and void.

Standing is a jurisdictional component of a party's case because only a party who has standing may invoke the jurisdiction of a court. *Governor's Policy Research Office v. KN Energy*, 264 Neb. 924, 652 N.W.2d 865 (2002); *Miller v. City of Omaha*, 260 Neb. 507, 618 N.W.2d 628 (2000).

As an aspect of jurisdiction and justiciability, standing requires that a litigant have such a personal stake in the outcome of a controversy as to warrant invocation of a court's jurisdiction and justify the exercise of the court's remedial powers on the litigant's behalf. *Chambers v. Lautenbaugh*, 263 Neb. 920, 644 N.W.2d 540 (2002); *State ex rel. Steinke v. Lautenbaugh*, 263 Neb. 652, 642 N.W.2d 132 (2002). In order to have standing to invoke a tribunal's jurisdiction, one must have some legal or equitable right, title, or interest in the subject of the controversy. *Id.*

The purpose of a standing inquiry is to determine whether one has a legally protectable interest or right in the controversy that would benefit by the relief to be granted. *Mutual Group U.S. v. Higgins*, 259 Neb. 616, 611 N.W.2d 404 (2000); *Hawkes v. Lewis*, 255 Neb. 447, 586 N.W.2d 430 (1998).

Based on the requirements for standing and given our conclusion that John was not a necessary party, John did not have standing to bring a motion for new trial or for the judgment to be set aside, challenging the court's order declaring the purported marriage between Dianne and Dale null and void. The sole issue presented to the trial court was the validity of the purported marriage between Dianne and Dale. As to this single

issue, the only persons who had a legally protectable interest or right in the controversy were Dianne and Dale. The trial court's ruling regarding Dianne and Dale's purported marriage may affect the outcome of the pending litigation between Dianne and John in Florida. However, such a possibility does not equate to John's having a legally protectable interest or right in the controversy between Dianne and Dale.

Having concluded that John was not a necessary party and that he did not have standing to bring a motion challenging the court's order in the declaratory judgment action, we need not address his remaining assignments of error. See *Rush v. Wilder*, 263 Neb. 910, 644 N.W.2d 151 (2002) (appellate court is not obligated to engage in analysis which is not needed to adjudicate case and controversy before it).

Finally, Dianne has requested an award of attorney fees in this appeal. Neb. Ct. R. of Prac. 9F (rev. 2001) requires that

> [a]ny person who claims the right . . . to an attorney fee in a civil case appealed to the Supreme Court or the Court of Appeals must file a motion for the allowance of such a fee supported by an affidavit which justifies the amount of the fee sought for services in the appellate court.

Upon Dianne's compliance with rule 9F, we will render a decision on Dianne's request for attorney fees for this appeal.

## CONCLUSION

We conclude that the trial court did not abuse its discretion in entertaining jurisdiction over Dianne's declaratory judgment action. We further conclude that John was not a necessary party to the declaratory judgment action and that John did not have standing to bring a motion for new trial or to set aside the judgment, challenging the trial court's order declaring the purported marriage between Dianne and Dale null and void. Accordingly, the trial court's order overruling John's motion for new trial or to set aside the judgment is affirmed.

AFFIRMED.