MARION MAY OLSON GIBBONS, APPELLEE, V. CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY, APPELLANT.

FILED SEPTEMBER 20, 1915. No. 18219.

1. **Trial:** WITNESSES: CREDIBILITY: QUESTION FOR JURY. If a witness admits that she has told untruths out of court and has before the trial stated some of the matters in controversy entirely different from her testimony in court, it is still for the jury to determine as to her veracity when under oath and as to the credibility of her testimony.

2. **Evidence:** SUFFICIENCY. When the plaintiff's testimony is not contradicted or explained by defendant, although the facts testified to by her are equally within the knowledge of the defendant's agents, her testimony, if plain and unequivocal, and consistent with the established facts, should be considered as establishing such facts so testified to by her.

3. **Evidence of Value.** The owner of property is generally admitted to testify as to its value, but when the property has a well-known market value, and the owner has not purchased it, nor any property of a similar character, and does not show any means of knowledge of its value, her testimony upon that point has little weight, and is only admitted in the absence of better evidence. If, however, the property is shown to have some value, and the negligence of the defendant has exposed it to loss under conditions which make it impossible to furnish any other evidence of value, the defendant cannot escape liability if any evidence tending to prove value can be obtained. Under such circumstances, the owner's estimate of value must be received, and, being uncontradicted, will support a verdict in her favor.

Gibbons v. Chicago, B. & Q. R. Co.

4. **Carriers: BAGGAGE.** "Baggage" includes, "not only articles of apparel, whether for use or ornament, but also other articles, the use of which is personal to the traveler, and the necessity or convenience of which has arisen from the fact of his journeying." 5 R. C. L., p. 158.

5. ———: ———: QUESTION OF LAW AND FACT. The question as to what is properly baggage for which the carrier is liable as insurer is a mixed question of law and fact. If the evidence is without substantial conflict, it is ordinarily one of law, but, if it depends upon facts from which reasonable men might draw either conclusion, the question is for the jury, under proper instructions.

6. ———: LOSS OF PROPERTY: LIABILITY. If the property is not properly baggage, the carrier would still be liable if its loss was caused by its own gross negligence, but not if it is caused by accident, or the act of some third party, or even by ordinary negligence of the defendant.

7. ———: ———: MEASURE OF DAMAGES. When articles of baggage have no market value, as clothing that has been in the use of the owner, and articles of that nature, the value to the owner may be proved; but an ordinary diamond of good quality has a market value, and that is the measure of damage for its loss, in the absence of evidence that it has a different and peculiar value to the owner.

8. ———: ———: ———: INSTRUCTIONS. When the articles sued for have a certain market value, and no special value to the owner, it is erroneous to instruct the jury that the measure of damages is "what they were worth to the owner," and when the evidence as to value is meager, and uncertain as to whether it relates to the market value or some supposed peculiar value to the owner, such instruction is prejudicial, and will require a reversal.

APPEAL from the district court for Scott's Bluff county: RALPH W. HOBART, JUDGE. *Reversed.*

*E. E. Whitted* and *Wright & Mothersead,* for appellant.

*Morrow & Morrow, contra.*

SEDGWICK, J.

The plaintiff bought a ticket at Home City, a station on the Union Pacific, near Topeka, Kansas, for passage to Grand Island, Nebraska. At Grand Island she caused her trunk, which had been checked as baggage, to be transferred to the station of the defendant company, and there bought a ticket for passage to Scottsbluff, Nebraska.

She requested the defendant's agent to check her trunk to Scottsbluff, and the agent gave her a check therefor; but, on her arrival at Scottsbluff, she was unable to get her trunk, and when she received it, after some delay, she insisted that it had been opened and certain articles taken therefrom. She brought this action in the district court for Scott's Bluff county to recover the value of the articles. There was a verdict and judgment in her favor, and defendant has appealed.

The defendant offered no evidence. The case rested upon the testimony of the plaintiff, her husband, and sister. The testimony of the plaintiff's husband and sister was very meager, amounting only to confirmation of the plaintiff as to her ownership of a diamond, and one or two other particulars testified to by plaintiff, so that the plaintiff's case depends substantially upon her own testimony.

The defendant contends that the plaintiff's admitted untruthfulness so impairs the weight of her testimony as to destroy her evidence. She testifies that she described the diamond to her attorney to enable him to attempt to find it, and that she told him it was a "diamond with a very small chip off of the bottom of it." She was then asked, "Then, it did have a chip off of it, did it not?" and answered, "No, sir; it did not. * * * Q. Is that the first time you ever lied about that diamond? A. No, sir. Q. When did you first commence lying about it? A. Well, a young man asked me, a while after my husband died, what I did with his diamond, and I says, 'I gave it away.' Q. That is when you first began lying about it? A. Yes, sir; because there were too many questions asked me about it. Q. And you kept that up until you met Mr. Morrow? A. I did, if questions came up. Q. And the only time you ever told the truth about it was when you were suing the railroad company about it? A. No, sir. Q. When did you begin telling the truth about it? A. Oh, I have told the truth about it lots of times. Q. About half and half, you think? A. No, sir. Q. You think the truth is a little bit in your favor, do you? A. Yes, sir."

It was for the jury to determine as to the veracity of this witness when under oath. When this witness testified to matters that were equally within the knowledge of the defendant's agents, and the defendant did not see fit to offer any testimony contradicting or explaining the evidence of the plaintiff, her evidence as to such matters must be taken as establishing the fact so testified to. Of this character was her testimony that the defendant's agent had made a mistake in checking the trunk, and that the check given her called for another trunk altogether, and that her trunk had been miscarried and did not arrive at Scottsbluff until several days after it should have arrived, and also her testimony as to the condition of the trunk and its fastenings when it was delivered to her at Scottsbluff. She testified that when she delivered the trunk to the defendant at Grand Island it was securely "roped twice around endways and twice around the center, and when it arrived in Scottsbluff it was once around the trunk endways and three times around the middle;" also, "one corner on the bottom of the trunk was broken off; the bottom board was split off about half way across, and it had been unroped." This and similar testimony as to the condition of the trunk was not denied by the defendant. The negligence of the defendant which exposed plaintiff's property to danger of loss, not having been denied by defendant when the facts were peculiarly within the knowledge of its agents, must be regarded as fully established. The owner of property is generally admitted to testify as to its value, but when the property has a well-known market value, and the owner has not purchased it, nor any property of a similar character, and does not show any means of knowledge of its value, her testimony upon that point has little weight. Her testimony, therefore, as to its value could only be admitted in the absence of better evidence. If, however, the property is shown to have some value, and the negligence of the defendant has exposed it to loss under conditions which make it impossible to furnish any other evidence of value, the defendant cannot escape liability, if any evidence tending to prove value can be ob-

tained; Under such circumstances, the owner's estimate of value must be received, and being uncontradicted, will support a verdict in her favor.

It is contended that the diamond was not properly baggage, and that the defendant, therefore, would not be liable as an insurer thereof. There is an exhaustive treatise and citation of authorities upon this subject in 5 R. C. L. p. 158 *et seq.*, under the title of "What Constitutes Baggage." It is said: "In general the term includes, not only articles of apparel, whether for use or ornament, but also other articles, the use of which is personal to the traveler, and the necessity or convenience of which has arisen from the fact of his journeying. * * * As defined in the preceding paragraph, baggage has been held to include wearing apparel, even of extraordinary value, under certain conditions of life. * * * Articles of extraordinary value are not properly classed as baggage, as, for example, papers or memoranda of great and special importance in business, or jewelry of exceptional value." The plaintiff was living with her husband at Scottsbluff, Nebraska.. He was "first press foreman in sugar factory." He worked by the day, but the evidence is meager as to his earnings and their style of living. The plaintiff had been visiting her sister in Kansas for a month or more. She testified: "Q. State what you used these articles for, Mrs. Gibbons. A. To wear. Q. State whether or not you had worn any of these articles, or all of them, on this trip. A. I wore them at different times. A. Had you worn this diamond? A. Yes, sir." On cross-examination she was asked: "Q. Now, you may state to the jury whether or not you wore this diamond yourself. (Objected to as repetition. Overruled. Exception.) A. Yes, sir; I have. Q. State whether or not you wore it on this trip. A. I did." On the other hand, her sister, who testified that she had seen the diamond frequently, was asked: "Q. State to the jury whether or not you ever saw Mrs. Gibbons wearing this diamond. A. No; I never saw Mrs. Gibbons wear it. I have seen Mr. Olson wear it. Q. That was Mrs. Gibbon's first husband? A. Yes, sir." The plaintiff's hus-

Gibbons v. Chicago, B. & Q. R. Co.

band, with whom she had lived about seven years, testified that he had seen the diamond once, seven years before the trial, and had never seen it since.

The question is one of law and fact. If the evidence is without substantial conflict that the article in question is not properly baggage for which the company would be liable as insurer, the court should so instruct the jury; but, if it depends upon facts from which reasonable men might draw either conclusion, the question is for the jury, under proper instructions. The evidence is not so clear, as to require the court to withdraw the question from the jury. If the diamond was not properly baggage, the company would still be liable, if its loss was caused by its own gross negligence, but not if it is caused by accident, or the act of some third party, or even by ordinary negligence of the defendant.

The court instructed the jury: "The measure of damage for the loss of the articles is to be determined by what they were worth to the owner, and not by what they would bring on the market, the value to be measured at the place of destination." This instruction was clearly erroneous under the evidence in this case. The plaintiff testified to the value of some of the articles lost, which apparently would have no market value, and as to such this instruction was applicable; but a diamond of the value that this diamond is alleged to be would, in the hands of persons competent to judge, have a certain market value, and there is no evidence in the record indicating that it possessed any other or different value, or any value peculiar to the plaintiff or her use of it. The plaintiff contends in the brief that, "if the market value of the articles sued upon and the value to the owner were at all different, the value to the owner would certainly be greater than the market value; and if the instruction required the appellee to prove the value to the owner, and only the market value was proved, then the fact that only the market value was proved is to the advantage of the appellant in this case, and the error, if any, is without prejudice." But if the value to the owner "would certainly be greater than the

market value," the jury, under this instruction, would be allowed to find a greater value than the market value, which would be, of course, erroneous.

When the evidence is so meager and so uncertain as to the value of the articles sued for, a correct statement of the law to the jury as to their finding of value is very important, and this instruction was peculiarly prejudicial to the defendant.

The judgment of the district court is therefore reversed and the cause remanded.

REVERSED.

HAMER, J., not sitting.